CITY OF ASHLAND, Petitioner, vs. ASHLAND WATER COMPANY, Respondent.

*March 22 — April 9, 1901.*

*Corporations: Franchises: Forfeiture: Leave to commence action: Sufficiency of petition.*

1. Permission to commence an action to forfeit the franchises of a corporation should not be granted on a mere petition stating grounds on information and belief, where the petition is met by an answer putting in issue all the material allegations thereof, verified upon the knowledge of the person making it, and supported by affidavits of persons competent to testify as witnesses positively denying the material facts alleged.

2. The provision of sec. 3241, Stats. 1898, that " upon cause shown " an action may be brought by the attorney general or any private party in the name of the state, on leave granted by the supreme court, to vacate the charter or annul the existence of any corporation which shall misconduct itself in any of the ways enumerated, requires that the petitioner shall satisfy the court that he has at hand evidence sufficient, if unopposed, to justify the forfeiture.

APPLICATION for leave to bring an action to forfeit the franchise of the *Ashland Water Company. Denied.*

Application for leave to commence an action in circuit court to forfeit the franchise of the *Ashland Water Company,* under which, since about 1884, a system of waterworks has been maintained to supply water for public and private purposes in the territory included within the city of *Ashland.* The following, among other matters, are alleged in the petition on information and belief: The franchise was granted in 1884 to individuals. It was thereafter amended in some particulars, and in 1887 was in form confirmed by the common council of said city, for the term of fifty years, to the *Ashland Water Company,* the then owner thereof. Two members of the council were stockholders in the water company, and voted for the confirmatory ordinance contrary to the city charter, and their votes were

necessary to its passage. Complaints were made about the condition of the water furnished by the company in and prior to 1895. The bad condition of the water resulted in an action being commenced to forfeit its franchise for abuse thereof. An agreement was made for the discontinuance of the action and settlement of all differences between the company and the city on condition, among other things, that the company should immediately commence extending or improving its system so as to furnish an adequate supply of pure water, and prosecute the work in that regard to effect as expeditiously as possible, the city having the right to enter upon and examine the waterworks property at any time and place for the purpose of investigating the condition of the water supply. Pursuant thereto the company constructed a filtration system which so improved the quality of the water that the proceedings to forfeit the franchise were dropped. The company failed, however, to continue to furnish the city with an adequate supply of pure water. In 1890 it opened a suction pipe in Chequamegon Bay, its source of water supply, at a point where the bay water was so contaminated with sewage from the sewage system of the city of *Ashland*, that impure water, containing disease germs, was pumped into the water mains and distributed to the customers of the company without the water passing through the filtering process. From that time to the present there has been an epidemic of typhoid fever in said city, traceable to the use of impure water allowed to enter the water mains of the water company in the manner stated, or not purified in the filtering process because the filtering system was not kept in a proper condition to do its work. Such system should be renovated at least once each week, but the water company has failed to give such attention thereto for upwards of six months. The company's franchise requires it to extend its pipe system when so ordered by the common council, which it has refused to do. Two instances are specified.

The petition is quite lengthy, but what has been stated contains the substance of the allegations of wrongdoing as a basis for vacating the waterworks franchise. It was signed by the city attorney, verified by him on information and belief, and contained an allegation to the effect that it was made by direction of the city council. There were no supporting affidavits.

The application was opposed by a verified answer putting in issue all the material allegations of the petition as to wrongdoing on the part of the water company. The verification was upon the knowledge of the person making it. The answer was supported by numerous affidavits made by persons competent to testify to the facts as witnesses. Such affidavits are to the effect that all the water furnished by the water company since the installation of the filtering plant has been taken from artesian wells or from Chequamegon bay, the bay water being all passed through the filtering plant before being distributed for consumption; that the plant has at all times since it was constructed been kept in a suitable condition to do the work it was designed to do; that it was constructed at a cost of some $40,000 and is the kind recommended by sanitary experts as best suited to free water from deleterious substances; that the only intake pipe in the bay by which water was formerly pumped therefrom directly into the water mains was sealed up by the city authorities in 1896, and has never since been opened; that there is no opening in the supply pipes by which water can be taken from the bay and pumped into the water mains without being passed through the filtering plant; that the plant has been operated and taken care of from the first in precisely the same way and in the manner best calculated to secure the best attainable results; that since the present system of furnishing pure water was installed, covering a period of some five years, there have been no cases of typhoid fever in *Ashland* except those brought into the

city from the outside; that the reason why the company refused to make the extensions mentioned in the petition was that the city was indebted beyond the constitutional limit, and further because, in one case, the common council, without any right so to do, dictated the size of water pipe to be used in making the extension, and imposed a penalty on the company for not complying with its demands; and in the other case the extension was ordered to be made upon private property.

*E. F. Gleason*, for the application.

*W. M. Tomkins* and *C. A. Lamoreux*, *contra*.

[No briefs on file.]

MARSHALL, J. This application is ruled against the applicant by *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496. It was there held, in effect, that permission to commence an action to forfeit a franchise should not be granted on a mere petition stating grounds therefor on information and belief, where it is met by affidavits of persons competent to testify as witnesses, positively denying the material facts alleged. It was supposed that the decision then rendered would so guide the attorney general in deciding whether to allow the use of his name as relator that applications of the kind before us would not reach this court by his permission without a fair *prima facie* case being stated in the moving papers, by positive allegations of wrongdoing in the petition or by supporting affidavits of persons competent to testify to the facts stated therein, or by both. When the legislature lodged power here to say "upon cause shown" (sec. 3241, Stats. 1898) when an action may be brought to forfeit a franchise, the intent was that such power should be exercised in each case with all the care requisite to the proper decision of a judicial question. As said in *State ex rel. Att'y Gen. v. Janesville W. Co.*, to merely examine the petition and grant it regardless of op-

City of Ashland vs. Ashland Water Co.

posing affidavits, because, if all the allegations thereof, whether upon information and belief or upon the knowledge of the petitioner, are true, it states a *prima facie* case, would be a failure to exercise that sound judicial discretion which the law contemplates, amounting to an abuse of judicial duty. It was foreseen by the legislature, we must assume, that much mischief might be done to public and private interests by the commencement of such actions without any legitimate ground therefor; and the peril in that regard was guarded against as far as practicable by requiring that this court shall be satisfied that a cause for judicial investigation exists, of such moment, as regards public interests, that some appropriate jurisdiction should be set in motion to that end, before the state's grantee of a franchise, or his assignee, shall be called into court to defend against a charge that he has been guilty of a wilful misuse or abuse thereof. A mere petition, containing complaints on information and belief, especially when opposed by affidavits denying all the alleged wrongdoing, comes far short of satisfying the spirit of the statute. The petition ought in any case to be upon the knowledge of the petitioner, or be supported by affidavits of persons having knowledge of the facts. Such support is indispensable where all the material allegations of the petition are positively denied by the affidavits of persons competent to testify as witnesses to the facts.

It should be understood that the legislative intent, as judicially declared in *State ex rel. Att'y Gen. v. Janesville W. Co.* and here affirmed, does not call for a preliminary trial of an alleged cause of action to forfeit a franchise, on affidavits, at the time of the application being heard in this court for leave to commence an action for that purpose. It requires, at such time, as a condition of the application being granted, that " cause be shown " within the letter and spirit of the statute; that is, that the petitioner shall satisfy the

City of Ashland vs. Ashland Water Co.

court that he has at hand evidence sufficient, if unopposed, to·justify the forfeiture. If it is true, as alleged, that the *Ashland Water Company* has for several months been furnishing its customers with water polluted with city sewage and disease germs, no reason is perceived why evidence thereof, in the form of affidavits, was not made a part of the application before us. The moving party, if the leave asked for were granted, could not make it available without proof of facts justifying the forfeiture. Without such proof being first produced, the water company would not have to accept the challenge of its rights and become an actor in the matter. Why, then, should leave to commence such action be granted, in the absence of any showing that the petitioner is in possession of evidence of the facts alleged, especially in the face of positive evidence that such alleged facts do not exist? How can a court say in such a situation that cause for the commencement of the action is shown.

It is said in the petition that an opening was made in 1900 in the intake pipe, so that bay water has since that time been pumped directly into the water mains. A·charge of that kind is very serious, in view of the notorious and apparently well-recognized fact that the bay water, before passing through some filtering system, is unwholesome, and the fact that an action instituted in 1895, to forfeit the water company's franchise, was discontinued upon its installing a satisfactory filtering system and giving satisfactory assurance that the purity of the water would be thereafter maintained. It is easy to make such a charge on information and belief and there not be in existence a scintilla of known evidence to substantiate it. Such a charge should not be made, as a basis for judicial action of the kind requested, before there is competent evidence in hand tending to establish it. If the water company has been guilty·of knowingly pumping polluted bay water into its water mains after securing immunity from a prosecution to forfeit its franchise, by constructing an

approved filtering system designed to free from impurities all the bay water distributed to its customers, with the understanding that it should be maintained and operated to accomplish that result, a forfeiture of its franchise would be a light punishment for the offense. But the value of such franchise and the property interests involved should not be imperiled by charges of that nature, recognized by an order, based upon a probability that they may be true, for a judicial investigation, in advance of the procurement of some credible evidence to establish them and the presentation thereof in the form of affidavits to this court, where the allegations in that regard are denied in the manner before indicated. A presentation of this kind, to warrant judicial action favorable thereto, should appear to be made in good faith, show that evidence is obtainable to establish the facts relied upon, that such facts plainly indicate some wilful misuse of the franchise defeating the very design of its creation, that a forfeiture, under the circumstances, will not be inequitable, and that the grievances complained of will be thereby, at least in some substantial degree, remedied. The forfeiture of a franchise is a severe remedy. It is in a civil action what capital punishment is in the criminal law. Courts proceed with great caution in such matters, not regarding a forfeiture justifiable except in a plain case of wilful misuse or abuse of the public privilege going to the very groundwork of the grant, and where no other punishment will adequately remedy the mischief. *State ex rel. Prosecuting Att'y v. Commercial Bank*, 10 Ohio, 535; High, Extr. Leg. Rem. § 649.

On the record before us the question of whether leave ought to be granted to challenge the right of the water company to continue to exercise the franchise in question is fully covered by the *Janesville Case*, 92 Wis. 496. On one side are mere charges, on information and belief, easy to make, without any known evidence to support them in a court of justice. On the other is a number of affidavits of persons competent

to testify as witnesses on a trial of the controversy involved. If the unfortunate condition said to exist in the city of *Ashland* is, as alleged, traceable to wilful conduct of the water company in distributing impure water to its customers, there should be relief as speedy and ample as the judicial power of the state can furnish. But before machinery should be set in motion to oust the water company of its franchise and wind up its affairs, which means confiscation of its property in whole or in part, the prosecutor should be able to show that he is in possession of evidence reasonably sufficient to justify it. If such an investigation shall be entered upon, as a well-grounded suspicion, even, that the allegations of the petition are true demands at the hands of the public authorities of *Ashland*, and it be prosecuted with the system and skill that should be devoted to a matter of such grave importance, facts can soon be uncovered, if they exist, which, when properly testified to on an application to this court for the use of a proper jurisdiction to forfeit the water franchise, will receive favorable consideration. The present application is clearly insufficient and must be denied.

*By the Court.*— So ordered.