Active Company, Respondent, v. Slate, Appellant.

*April 6—May 3, 1960.*

For the appellant there were briefs and oral argument by *Clyde E. Sheets* of Milwaukee.

For the respondent there was a brief and oral argument by *Herbert L. Usow* of Milwaukee.

BROADFOOT, J.  The appellant, who will be referred to hereinafter as the defendant, contends that the plaintiff failed to meet its burden of proof in that there is no evidence in the record of the existence of a partnership.

The record discloses that on May 27, 1954, a certificate of incorporation was issued to a corporation named M. S. B., Incorporated, for the purpose of engaging in the real-estate and real-property business generally. The records in the office of the secretary of state, of which we take judicial notice, disclose that the officers thereof were as follows: President, Sherwood Slate; vice-president, Ben Burzenski;

secretary, Harry Mallon; treasurer, Florence Burzenski. The record discloses that prior to November, 1955, the corporation constructed four or five residences in the suburban area of Milwaukee and that the plaintiff did plumbing work in connection with said buildings. The documents of record, whether signed by an officer of the plaintiff or by M. S. B., Incorporated, showed the latter to be a corporation. These buildings apparently were constructed in 1954 and 1955.

Stanley Konieczka, the president of the plaintiff, testified that he was informed in the fall of 1955 by Ben Burzenski that he had four jobs and he went to see him; that Burzenski had the blueprints for four duplexes to be constructed on adjoining lots that were practically identical as to floor plan; that on or about November 3, 1955, he made out an agreement for the installation of plumbing in one building on the corner of North Sixty-Eighth and West Capitol in Milwaukee in which S-M-B Builders was named as purchaser. A carbon copy of this document is in the record. The original has apparently been lost. The witness testified that he mailed the agreement or proposal to Mallon because he understood Mallon was the man who took care of the business end. When asked who Burzenski was he testified that he "was under the impression he was one of the partners or one of the company, whatever it happened to be." "He was the carpenter."

Plaintiff installed the plumbing in all four buildings for the sum of $2,195 each and was paid that amount. The proposal stated "laterals $265 extra." The laterals were connections between the curb and the city sewer. Shortly after the work started, the plaintiff discovered that three of the properties were owned by individuals and the fourth by M. S. B., Incorporated. The construction of each building was financed by a separate loan from a building and loan association. As the work progressed plaintiff received orders on the building and loan association signed by the individual

owners on their properties and by an officer of M. S. B., Incorporated, on the corporate property. Plaintiff also signed waivers of lien to their respective owners and the same were filed with the building and loan company. One of them was given to M. S. B., Incorporated.

There was no proof that an actual partnership existed. The plaintiff, however, contends there was a partnership by estoppel. Plaintiff asserts that the record shows Burzenski contracted for all four houses; that Mallon entered into the contracts therefor; that Burzenski supervised the construction of the four buildings; that Slate handled all legal matters and payouts and that but one set of plans was used for all four houses.

For reasons stated later we do not think it necessary to discuss whether or not the record establishes those contentions or the effect thereof. Mr. Konieczka was not definite in his assertion that there was a partnership. He thought Burzenski was "one of the partners or one of the company, or whatever it happened to be." Again, he testified that "we were told that the fourth house was owned by the partnership or company or whatever it happened to be." The main issue here was whether there was a partnership. In that connection statements made previous to the trial by one of the alleged partners would not be admissible against one who denies that he was a member of the partnership and was not present when the statements were made. *First Nat. Bank of Wausau v. Conway*, 67 Wis. 210, 30 N. W. 215.

Another point upon which the plaintiff failed is that the doctrine of estoppel does not operate against one unless he has done something to induce another to change his position to his prejudice. *Callaway v. Evanson*, 272 Wis. 251, 75 N. W. (2d) 456. The first two headnotes preceding the decision in *Wisconsin Telephone Co. v. Lehmann*, 274 Wis. 331, 80 N. W. (2d) 267, concisely state the law. They are as follows:

"1. The general rule is that a person who is not actually a partner may render himself liable as though he were one, by so conducting himself as to reasonably induce third persons to believe that he is a partner and to act on that belief, which rule is based on the principle of estoppel, and is codified in the Uniform Partnership Act, sec. 123.13, Stats., dealing with partnership by estoppel.

"2. The liability of the nonpartner in such case being based on estoppel, it is essential to the cause of action that the party asserting the liability must have been induced by the misleading appearance to change his position to his detriment."

There is no showing by the plaintiff that it changed its position in any manner to its detriment. Mr. Konieczka, a person of ordinary intelligence and prudence, certainly knew he was dealing with a corporation during the years 1954 and 1955 on the other building projects. He does not show that he had any reason to believe the corporation had been dissolved and that a partnership had been formed. He does not show there was a partnership for the construction of the three buildings that were individually owned.

Although the defendants did not make a timely request for a special verdict prior to the submission of the case, they did ask for a jury finding as to whether or not a partnership existed. This was a proper question for determination by the jury and could have been included even in connection with a general verdict. They further requested the court to instruct the jury on the law of partnership. The court refused to do so and stated that could be handled in the arguments.

Although the requested instructions were not in writing it was incumbent upon the judge to instruct the jury upon this matter even without request. He attempted to cure the matter by making findings of fact some two months after the verdict was returned, in which the trial court found that there was a partnership.

In the absence of a request for a jury finding on a controverted issue of fact, a party is deemed to have waived and such findings are proper by the trial court. However, in this case defendants requested a jury finding and the court erred in failing to submit same. Further, the finding by the trial court was against the great weight and clear preponderance of the evidence. Normally this would require a new trial, something we try to avoid where possible. There is testimony that the defendant was asked about $265 for a lateral and he agreed to pay it. It is clear from the record that he did owe that amount on his individual property.

Under our discretionary power and pursuant to sec. 251.09, Stats., it is our determination that justice has miscarried and under those circumstances we are authorized to direct the entry of a proper judgment. Since Mallon did not appeal, judgment against him will be permitted. However, the judgment as to the defendant Slate is reversed with directions to reduce the amount of the judgment against him to the sum of $265 and costs. When and if Slate pays the amount of said judgment the same shall be credited upon the judgment against Mallon.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter a judgment against the defendant Slate consistent with the above opinion and to reinstate the judgment against Mallon.