# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# Richard Jerome DZIUBA, Defendant-Appellant.

Supreme Court

*No. 86-2017-CR. Argued December 1, 1988.—Decided February 15, 1989.*

(Also reported in 435 N.W.2d 258.)

For the defendant-appellant there were briefs (in court of appeals) by *Gerald S. Boisits, James E. Kenny,* and *Frank and Kenny,* Milwaukee, and oral argument by *Mr. Boisits.*

For the plaintiff-respondent the cause was argued by *Christopher G. Wren,* assistant attorney general, with whom on the brief (in court of appeals) was *Donald J. Hanaway,* attorney general.

STEINMETZ, J. The issue in the case is whether the state can force the sale of the defendant's, Richard Jerome Dziuba's, home and apply the proceeds toward restitution as a condition of the defendant's probation.

On August 13, 1981, the defendant, pursuant to plea negotiations with the Waukesha County District Attorney's office, pleaded no contest to a felony charge under sec. 943.10(1)(a), Stats., burglary, which carries a maximum sentence of ten years. Waukesha county circuit court Judge Neal Nettesheim sentenced Dziuba to five years in prison but then stayed the sentence and order probation for a period of seven years. As a condition of probation, the trial court ordered restitution of an amount in excess of $63,000.

The trial court's decision to impose probation with a condition of substantial restitution followed a plea agreement that resulted in dropping several other criminal charges against Dziuba. Thus, he received no

prison sentence for several crimes. At the sentencing hearing, Judge Nettesheim clearly stated numerous times that the decision to place Dziuba on probation with a condition of restitution, rather than sending him to prison, was based on the fact that Dziuba's equity in his house would allow him to pay much, if not all, of his restitution obligation. If Dziuba had been sentenced to prison, he most likely would have defaulted on his mortgage obligations, lost all equity in the home which would have precluded any meaningful restitution. Without objection, Dziuba accepted the punishment structure set by Judge Nettesheim which balanced the victim's right to be reimbursed with the defendant's right to forfeit the statutory homestead right and protections of by Art. I, sec. 12 of the Wisconsin Constitution and avoid incarceration by accepting the benefits of probation.

The defendant appealed to the court of appeals and in an unpublished per curiam decision, the court affirmed the term of probation. The court of appeals affirmed Judge Nettesheim's exercise of discretion in "fashioning a restitution order which may require Dziuba to divest himself of certain assets, even his major asset."

After the first appeal to the court of appeals, Waukesha county circuit court Judge Harry G. Snyder conducted a hearing to determine whether Dziuba had complied with his probation and restitution order. In lieu of ordering the sale of Dziuba's residence, Judge Snyder imposed additional conditions of probation while expressly retaining the option to sell the home. After a later report from the defendant's probation agent which stated that the defendant had refused to obey several of the probation conditions, the trial court held an additional hearing and found that "Mr. Dziuba

has not made a good-faith effort to meet the terms and conditions of probation and restitution order that is a condition of that probation." The court ordered:

> [T]hat Mr. Dziuba pay to the victims in order to show a good-faith and intent to pay restitution without the sale of the home, pay to the victims the amount of $8,000 within the next 90 days. If he fails to do so, this Court will sign an order prepared by counsel for the victims or the State of Wisconsin or whoever wishes to prepare it, which may give the victims a lien against that property ....

Dziuba failed to comply with the court's order and Judge Snyder held another hearing at which the trial court stated that:

> Mr. Dziuba has frankly made a mockery out of the original sentence concerning the probation that he was placed on concerning the foundation of that probation as indicated clearly by Judge Nettesheim and concerning the fact that he clearly avoided going to prison at that time. ... We are here because Judge Nettesheim clearly placed upon the record his intentions concerning allowing Mr. Dziuba to remain free of prison. He clearly indicated that the homestead was to be held hostage, if you wish, under the probation order concerning some meaningful payment to the victims of Mr. Dziuba's criminal actions and Mr. Dziuba's frankly made a mockery of that ....

The trial court later made findings of fact, including that the defendant had not made a good faith effort to meet the terms and conditions of probation which contained the restitution order. Dziuba appealed for a second time and the court of appeals certified the case

to this court pursuant to sec. 809.61, Stats., which we accepted.

Dziuba's probation had a condition attached: the equity in his home would be security for his restitution obligation. Dziuba did not object to this condition of probation. Had the defendant made a timely objection to the application of the equity in his home toward restitution, the trial court could have considered the alternatives. Obviously, incarceration was one of the alternatives. If we accept Dziuba's argument, he will have avoided incarceration and obtained the benefits of probation, yet the main punishing factor of his probation, the condition to reimburse the victims, will be removed. It is not inappropriate in these circumstances to allow a person who invades another's home to forfeit the rights in his own.

First, Dziuba argues that this condition of probation is prohibited by sec. 815.20(1), Stats., the homestead exemption statute. Secondly, Dziuba argues that this condition of probation violates art. I, sec. 12 of the Wisconsin Constitution.

■

Regarding Dziuba's first argument, we consider the validity of the conditions of probation in light of two statutes. Neither the homestead exemption statute nor the restitution statute excludes the other from its operation. The trial judge, as was done here, balances the interests each statute seeks to protect. The restitution statute[1] reflects a strong equitable public policy

---

[1]Section 973.09(1m)(a), Stats. (1985–86) provides:

> In determining the amount and method of payment of restitution, the court shall consider the financial resources and future ability of the probationer to pay. The court may provide for payment of restitution to the victim up to but not in excess of the pecuniary loss caused by the offense. The probationer may assert

that victims should not have to bear the burden of losses if the defendant is capable of making restitution. Under the statute, if the defendant secures the benefit of probation, the court must impose restitution as a condition unless a substantial reason exists not to do so. Sec. 973.09(1)(b), Stats. (1985–86). This is the stated public policy.

Justice William G. Callow dissented in *Huggett v. State,* 83 Wis. 2d 790, 266 N.W.2d 403 (1978); however, in that dissent he referred to some undeniable factors of probation and restitution. He stated:

> A better result would be to provide that, where the defendant requests probation at the time of sentencing and accepts restitution as a condition of probation, restitution shall be presumed to be within the ability of the defendant to pay until the defendant petitions the court for a hearing on the reasonableness of the order for restitution. ... The burden of showing an inability to meet the restitution as a condition of probation requirement shall be upon the defendant. ...
>
> The old saw "crime does not pay" should become a legal reality whenever possible. Society and the law should require that the "criminal shall repay." In order to accommodate such a result every

any defense that he or she could raise in a civil action for the loss sought to be compensated by the restitution order. If the court also orders payment of fines, related payments under s. 973.05 and costs under s. 973.06, it shall set the amount of fines, related payments and costs in conjunction with the amount of restitution and issue a single order, signed by the judge, covering all payments required as a condition of probation. If the costs for legal representation by a private attorney appointed under s. 977.08 are not established at the time of issuance of the order, the court may revise the order to include those costs at a later time. The court shall consider the interest of the victim in receiving restitution when determining whether to order payments of costs.

reasonable effort should be made to require the defendant to make restitution and to recognize that victims should not suffer financial loss. ...

The principle that the defendant should "pay his debt to society" should be refined to provide that the defendant shall pay his debt to his victim, plus interest, on the value of the property during the period the victim is deprived of his property.

The defendant must be made aware of the impact of the crime upon the victim. ...

The defendant who pleads for probation should recognize that probation is a "second chance" to prove that he will act responsibly and that accountability means making the victim whole.

*Id.* at 806–07.

In *State v. Monosso,* 103 Wis. 2d 368, 378, 308 N.W.2d 891 (Ct. App. 1981), the court of appeals stated:

An appellate court should review conditions of probation such as restitution to determine their validity and reasonableness as measured by how well they serve to effectuate the objectives of probation. Such objectives are rehabilitation and protection of the state and community. *Huggett v. State,* 83 Wis. 2d 790, 798, 266 N.W.2d 403, 407 (1978).

Since fulfilling restitution ultimately could occur only by using the equity in his home, and because the defendant did not object to the sentence imposed by the trial court which would have given it an opportunity to impose an alternative sentence, he is now estopped from claiming that the equity in his home is protected from application to restitution. *State v. Smith,* 129 Ariz. 28, 628 P.2d 65 (Ct. App. 1981).

114

In *Mercado v. Mitchell,* 83 Wis. 2d 17, 26–27, 264 N.W.2d 532 (1978), the court stated: "There are three elements to equitable estoppel: (1) Action or inaction which induces, (2) reliance by another, (3) to his detriment." (Footnote omitted.) *See also Dunn v. Pertzsch Construction Co.,* 38 Wis. 2d 433, 437, 157 N.W.2d 652 (1968); *Estate of Helgert,* 29 Wis. 2d 452, 460, 461, 139 N.W.2d 81 (1966); *City of Milwaukee v. Milwaukee County,* 27 Wis. 2d 53, 66, 113 N.W.2d 393 (1965).

The trial court and the prosecutor relied on the defendant's silence and believed the probation with conditions attached was satisfactory to him. One of the main components of the probation was the order for restitution. If the defendant is allowed to avoid the application of the equity in his home to restitution, the punishment imposed will be substantially undermined.

The defendant could have used some other source of funds to fulfill his restitution obligation if available. The defendant does not dispute that the homestead exemption statute is an equitable one and operates to protect the homeowner and family. *Warsco v. Oshkosh S. & T. Co.,* 190 Wis. 87, 92–94, 208 N.W. 886 (1926). This record does not indicate that Dziuba had children or any other dependents. *Id.* at 93. Furthermore, in *Warsco,* this court clearly stated that at times, where a person benefits from a wrongful act, the homestead exemption statute may have to surrender to other stated public policy. *Id.* at 94. In light of Dziuba's failure to object to the conditions of probation, the public policy behind the order for restitution must prevail.

Dziuba also argues that the application of the equity in his home to restitution is violative of the Wisconsin Constitution. Art. I, sec. 12 of the Wisconsin

115

Constitution provides in part that "no conviction shall work corruption of blood or forfeiture of estate." The defendant agreed to permit the assets of his house to be pledged for his probation.

We believe art. I, sec. 12 is clear in that no conviction can automatically divest a person of his or her property. However, this constitutional provision is not absolute and does not forbid a person from pledging his or her property in an attempt to avoid incarceration. At the sentencing hearing the trial court stated: "[A]t the appropriate time during the term of probation the home, the residence of this defendant, shall be listed for sale and the proceeds applied to the restitution in this case. That's a tragedy, Mr. Dziuba." Dziuba knew the equity in his home would be applied toward restitution if the victims were not reimbursed for their losses.

We believe it is unsustainable in principle to now grant the defendant's relief when the defendant failed to object to a condition of probation which infringed on this constitutional right. The defendant should not be permitted to refrain from asserting his constitutional privilege and, after obtaining the benefits of such forfeiture, later claim the privilege thereby escaping the detriments that a timely objection would have produced. "[W]aiver of a constitutional privilege may be established by conduct amounting to an estoppel." *Levin v. United States,* 5 F.2d 598, 602 (9th Cir. 1925). Just as Dziuba is estopped from claiming the homestead exemption, he is also estopped from claiming that under the facts of this case art. I, sec. 12, Wisconsin Constitution, protects him from the imposition of a lien against his house pursuant to the order of the trial court.

The defendant also claims that the trial court order which established the amount of restitution violated his right to a jury trial as provided in art. I, sec. 5 of the Wisconsin Constitution. We hold that there is no right to a jury trial when a trial court determines the amount of restitution required as a condition of probation. *State v. Foley,* 142 Wis. 2d 331, 342–43, 417 N.W.2d 920 (Ct. App. 1987). Commentators have disagreed as to whether a formal jury trial is required when determining the amount of restitution in a given case.[2]

Section 973.09(1m)(a), Stats. (1985–86) specifically states that the court determines the amount of restitution. Furthermore, sec. 973.09(1m)(b) provides, in relevant part:

> Upon the application of any interested party, the court shall schedule and hold an evidentiary hearing to determine the value of the victim's pecuniary loss resulting from the offense or the amount of any payment ordered under par. (a). No hearing is required unless this application is made.

In regard to an argument similar to that presented by Dziuba this court stated:

> [These] arguments proceed on the erroneous theory that determining the amount of restitution is a civil action to determine civil liability. When a court in a criminal suit determines the amount of restitution for the purpose of probation, it does so as a part of the criminal proceeding. Such proceeding determi-

---

[2]*Compare* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv. L. Rev. 931, 943–45 (1984) *with* Henderson, *The Wrongs of Victims' Rights,* 37 Stan. L. Rev. 937, 1015 (1985).

nation is analogous in its nature to a presentence investigation.

*State v. Scherr,* 9 Wis. 2d 418, 425-26, 101 N.W.2d 77 (1960). *See also, Thieme v. State,* 96 Wis. 2d 98, 103-04, 291 N.W.2d 474 (1980).

When determining the amount of restitution, certain procedures must be followed. In *State v. Pope,* 107 Wis. 2d 726, 729, 730, 321 N.W.2d 359 (Ct. App. 1982), the court of appeals stated:

> The language of sec. 973.09, Stats., demonstrates that the restitution hearing is not intended to be an adversary civil trial.[3] The statute does not require that a certain evidentiary standard be employed or that the equivalent of a civil trial be held. The hearing is to establish the amount of damages which can be the basis for restitution, not a trial to establish civil liability.

Dziuba was afforded a hearing in compliance with *Pope.* The trial court order establishing the amount of restitution did not violate the Wisconsin Constitution.

---

[3]At the time of the *Pope* decision, sec. 973.09(1m), Stats., provided in relevant part:

> In determining the amount and method of payment, the court shall consider the financial resources and future ability of the probationer to pay. The court may provide for payment to the victim up to but not in excess of the pecuniary loss caused by the offense. Upon the order of the court, the district attorney or an official of a law enforcement agency, as defined in s. 165.83(1)(b), shall document the nature and amount of the victim's pecuniary loss. Upon the application of any interested party, the court shall schedule and hold an evidentiary hearing to determine the value of the victim's pecuniary loss resulting from the offense. The court shall not establish a payment schedule extending beyond the maximum term of probation that could have been imposed for the offense under sub. (2).

Lastly, the defendant argues the current amount of the lien remains uncertain because some payments have been made. The amount of any lien is subject to fluctuation as a party makes payment on the obligation. To the extent any questions exist concerning the precise amount of the lien, the question poses one of fact for the trial court to resolve in a hearing when applying the proceeds, if any, of the sale of the house to the restitution. At oral argument reference was made to other encumbrances on the property which may make the principle of this decision more important than the ultimate result.

Under the circumstances of this case, the trial court's order for the sale of the defendant's property with the proceeds to be applied to restitution was not an abuse of discretion.

*By the Court.*—The order of the Waukesha County Circuit Court is affirmed.